# Bratton *against* Mitchell.

An assessment of a tax by some proper authority, is essential to the validity of a sale of unseated land by the treasurer.

**ERROR** to the Common Pleas of *Mifflin* county.

George Mitchell against Charles Bratton and James Bratton.

This was an action of ejectment for a tract of land, in which the plaintiff gave in evidence:

20th of November 1793, warrant to Frederick Lazarus, 400 acres adjoining land this day granted to William Cook, Derry township.

15th of May 1794, survey 390 acres 154 perches.

Offered—unseated land book, sale book.

Charles Ritz, Esq., sworn. I am the county treasurer; these are office books.

Offered the unseated list of Wayne township, Mifflin county, 1820, Frederick Lazarus 390 acres 154 perches, tax 34 cents.

Charles Ritz. This is the book on which the unseated taxes are paid.

Samuel P. Lilley. I am clerk to the commissioners; I have examined carefully, and not able to find the transcript returned for Wayne township for 1820. It is lost and cannot be found.

Dr Joseph B. Ard sworn. I was treasurer in 1822, and made the entry in this book. This entry of Frederick Lazarus, I don't recollect what I made it from; I must have had something to make it from, but I cannot recollect. It is an office book; it is the book in which I entered the taxes on the unseated lands when I was treasurer.

1821. From same book; unseated land, Wayne township, Frederick Lazarus 390, 134; tax 28.

[Bratton v. Mitchell.]

Dr J. B. Ard.　This also is my handwriting.

Defendants objected to the book.　The book is not properly kept—without title and without heading; begins with sale; does not appear a list kept for any purpose whatever; appears only a private memorandum book, kept by Dr Ard, the treasurer, for his convenience; does not appear to have any connexion with the record in the commissioners' office.

Court.　These books have been admitted and held as evidence. This very point was decided by the Supreme Court in Guyer *v.* Harris.

The objection was overruled, and defendants' counsel excepted. Book read.

Sale book before mentioned and proved by Mr Ritz.

Wayne township, sale in 1822.

Frederick Lazarus, 390, 154—1820 and 1821.

Tax, in all, 68 cents.

Sold 20th August 1822, to Anthony Elton, for $3.70.

$$\begin{array}{lr} \text{Tax} & 1.68 \\ \text{Add} & 1.50 \\ \text{Sale} & 37\frac{1}{2} \\ \hline & \$3.55\frac{1}{2} \end{array}$$

24th December 1822, Deed Poll, Jos. B. Ard, treasurer, to Anthony Elton, acknowledged on the 21st January 1823, in open court.

The only question decided in the cause was, whether the foregoing proof furnished such evidence of assessment as authorized a sale by the treasurer.

*J. Fisher,* for plaintiffs in error, argued that there was no assessment by any one authorized for that purpose; and the books should not have been admitted in evidence.

*Banks* and *Benedict, contra,* cited 2 *Penn. Rep.* 297 ; 5 *Watts* 287 ; 7 *Serg. & Rawle* 386 ; 13 *Serg. & Rawle* 360 ; 3 *Serg. & Rawle* 298.

The opinion of the Court was delivered by

Huston, J.—George Mitchell was the plaintiff in the Common Pleas, and gave in evidence a warrant to Frederick Lazarus, dated 20th of November 1793, for 400 acres; a survey on the 15th of May 1794, by James Harris, D. S., and offered unseated land book, sale book; and called

Charles Ritz sworn.　I am the county treasurer.　These are office books.

Offered the unseated list of Wayne township, Mifflin county, 1820, Frederick Lazarus 390 acres 154 perches, tax 34 cents.

Charles Ritz again.　This is the book on which the unseated taxes are paid.

Samuel P. Lilley.　I am clerk of the commissioners.　I have

examined carefully, and not able to find the transcript returned for Wayne township for 1820. It is lost and cannot be found.

Dr Joseph B. Ard sworn. I was treasurer in 1822, and made the entry in this book. The entry of Frederick Lazarus, I don't recollect what I made it from; I must have had something to make it from, but I can't recollect. It is an office book; it is the book in which I entered the taxes on unseated lands when I was treasurer.

1821, same book; unseated lands, Wayne township, Frederick Lazarus 390 acres 134 perches; tax 28 cents.

Dr J. B. Ard again. This is also my handwriting.

Defendants objected. The book is without heading or title; begins with a sale; does not appear to have been made or kept for any purpose, except as a private memorandum book kept by Dr Ard for his own convenience. Does not appear to have any relation to commissioners' office, or assessment of taxes.

Court. These books have been admitted and held as evidence. The very point was decided by the Supreme Court in Guyer *v.* Harris.

The book was identified by the judge writing his name on the inner side of the cover, (but it was not produced to this court.)

Book read. Wayne township, sale 1822.

Frederick Lazarus, 390 acres 154 perches—1820 and 1821.

Tax, in all, 68 cents.

Sold 20th of August 1822, to Anthony Elton, for $3.70.

| | |
|---|---|
| Tax . . . . . . . . | 1.68 |
| Add . . . . . . . . | 1.50 |
| Sale . . . . . . . . | 37½ |
| | $3.55½ |

All this was objected to but admitted; perhaps in a case of this kind it would not be easy to ascertain whether this, as part of the proceedings to affect a treasurer's sale, might be admitted, there being something to follow it, which being connected with it, might make the whole good. But if the whole had been stated as all the evidence of assessment and sale, it might safely have been rejected; it was, however, admitted, and the court told the jury it vested the title of the Frederick Lazarus tract in the purchaser, and this on the authority of Guyer *v.* Harris.

We have more than once had occasion to observe that the expressions of a judge are used with reference to the facts in the case trying; and that to consider them as universally true, when applied to every possible state of facts, " is unjust to the judge who used them, and calculated to mislead the court to which they are cited."

In *Stewart* v. *Shoenfelt* (13 *Serg. & Rawle* 360) Huntingdon township had been divided, and Porter township was the name given to part of it. The division line passed in part over a mountainous and unseated country, and was not exactly ascertained for

[Bratton v. Mitchell.]

five or six years. A tract, surveyed in the name of George Sevitz, was assessed, advertised, and sold as being in one township, and after the sale, when the line was run, found to be in the other. The positions laid down were, that although irregularity in assessment or otherwise would be cured, yet the land must be vacant and a tax must have been assessed. The Act of 1804, sec. 1, directs the return to state the township, *if known,* and in that case the mistake of the township was considered only an irregularity.

In *Hubley* v. *Keyser,* (2 *Penn. Rep.* 496) the *commissioners' books* showed an assessment, and the assessor (whose return was lost) proved distinctly that he valued the tract in question, and returned it as unseated to the commissioners. The sale was held valid.

In *M'Call* v. *Lorimer,* (4 *Watts* 355) a new case was presented. The assessor valued 400 acres as seated by Lorimer, and so returned it to the commissioners, who put it in the duplicate to the collector. Lorimer sold and removed from the township; this in 1814; and the collector was exonerated as to his tax. The assessor kept a copy of his assessment list, and on seeing Lorimer, was told he owned only half the tract, and the other half was unseated, and belonged to Nicholas Day; but he never informed the commissioners of this, and never made an alteration in the list returned to them, though he did make an alteration corresponding to Lorimer's statement in his own copy. In 1816, somehow, and it did not appear why, the treasurer sold 200 acres of this tract as unseated, the property of N. Day. M'Call, for whom Nicholas Day had been the agent, brought an ejectment against the purchaser, and the sale was held invalid. That case goes distinctly on the ground of there having been no assessment of the 200 acres as unseated. The assessor values and returns to the commissioners, who apportion the sum to be raised in the township on the several tracts, in fact, who perform the most important part of the assessing. The list returned to them, and their action on it, is the assessment. The private copy of the assessed list kept by the assessor is not known to the law, and it ought not to have been received; or if received, could not control the official documents in the commissioners' office. See also the case of *Morton* v. *Harris,* (9 *Watts* 322.)

The taxes on all lands must be paid or collected by sale. It would be unjust to collect from part of the community, and let others escape; but if the assessor overlooks an inhabitant or a tract of unseated land, and the year passes and no tax is assessed, and there is no action by the commissioners as to that man, or that property, neither the assessor nor any other person can legally seize the person or sell the property. The treasurer has no colour of right to do so; he has nothing to do with assessing a tax in any of its stages; he receives the tax on improved land

[Bratton v. Mitchell.]

from the collectors, and once in two years sells unseated land on which the taxes are unpaid; but we look in vain for any authority to sell lands on which no taxes have been assessed. Neither the law nor the commissioners' warrant gives him any such authority, nor colour of authority. The book exhibited was not produced, but from the statement made by the treasurer of all the tracts which he sold, or at most of all the tracts he advertised, he does not know from what he made it. I cannot believe there is any county in which the commissioners have not a book into which the lists of unseated lands are copied, and in which the taxes assessed on each tract are entered. Such a book is not made out each year, but inserting the names in the first column, the number of acres in the second, and ruling of separate columns, thus:—

|  | Acres. | Perches. |  |  |  |  |
|---|---|---|---|---|---|---|
| FREDERICK LAZARUS. | 390 | 154 | 1830 | 1831 | 1832 | 1833 |

and so on for each successive year the tax for each year when assessed is inserted in the proper column, and this mode, which I would say is common, is certain, and will show the amount assessed each year on each tract. But this is always a commissioners' book, made by their clerk, and belongs to their office. The sales are sometimes entered into it; perhaps it may be for a time, in some instances, lent to a lazy treasurer in which to enter his sales; but this, if ever, is rarely done, and ought never to be done.

There is, then, in this case, no evidence that any tax was ever assessed on this tract by anybody who had any right to assess. It does not come within the words of the Act, " no irregularity in the assessment or in the process," which supposes some assessment, or some process; that is, some act of the commissioners and assessor; though it dispenses with proof that at the trial the purchaser should show all to be regular. There were other points in the case, e. g., there was proof of improvements long ago within the lines of the survey of F. Lazarus, but it was alleged these were made under a title called Baird's. If the land is worth any thing, before the next trial, if there be one, the defendants may take a surveyor, and in the presence of those who know those improvements, and when they were made, run the lines of Baird's survey, and leave no doubt as to whether part of the Lazarus tract was improved before the treasurer's sale.

Judgment reversed, and a *venire de novo* awarded.