The judgment is affirmed.

# Wells *versus* Smyth *et al.*

1. A book from the commissioners' office, proved to be the assessments of a township, contained a list of unseated lands; it had an entry,—" No. 3888, quantity 1100 acres, name of warrantee, John Olden, valuation $1650," this, in connection with a resolution of the commissioners fixing the rate of county taxes and a day for appeals, was sufficient evidence of an assessment to support a sale for taxes under the Act of 1815.

2. The taxable or his property is assessed when the assessor has returned his list of property and valuation and the commissioners have apportioned the rate per cent. on the several townships.

3. Laws relating to taxation of unseated lands, examined and discussed.

March 26th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ. READ, J., absent.

Error to the Court of Common Pleas of *Clinton county*.

This was an action of ejectment by Lewis E. Wells against Samuel Smyth and Michael Stout, for a tract of 1100 acres of land in Leidy township, commenced January 13th 1865. The land had been surveyed, in pursuance of warrant No. 3888, to John Olden, issued July 17th 1793.

[Wells *v.* Smyth.]

The plaintiff claimed the land by virtue of a sale for taxes as unseated land.

On the trial, before Linn, P. J., the plaintiff gave in evidence, " List of unseated lands in Leidy township for the year 1858 :— No. 3888, quantity 1100 acres ; name of warrantee John Olden ; valuation $1650." Also the resolution of the commissioners at a meeting, May 14th 1858, fixing the rate for county tax for 1858 at $2\frac{1}{2}$ mills on the dollar, and fixing the day for appeal from the assessment for the several townships of the county ; the day for Leidy being June 10th. Also assessments of the school directors of Leidy township for 1858, directed to the *county commissioners,* and for 1859, directed to the *county treasurer.* The clerk of the commissioners testified that the commissioners' and treasurer's offices were in the same room, where there is a vault in which the books and papers of both offices are kept ; that the papers are on file in the office together and used for the same purpose, whether addressed to the commissioners or treasurer.

The plaintiff then offered to prove the manner in which the assessments for state, county, road and school taxes were recorded in the commissioners' books ; " that the taxes of 1858 or 1859, for which the tract in dispute was sold, amounting to $77.65, are the exact product of the mills thus assessed and fixed for county, state, school and road purposes upon the $1650 at which it has been shown to have been valued by the assessor of Leidy township ;" and that the sum " for which the tract in dispute was sold was made up from the rate fixed by the resolution of the commissioners in evidence, the rate fixed by law for the state tax—and the papers in evidence assessing the school and road taxes for the years 1858 and 1859 on the valuation returned by the assessor in evidence." This offer was made in connection with the commissioners' warrant of sale and the treasurer's deed to plaintiff.

The whole offer was rejected, and an exception noted. The plaintiff then offered the warrant of the commissioners, dated March 1st 1860, to the treasurer to sell " tract in the name of John Olden, No. 3888," and the deed of the treasurer, dated August 30th 1860, to the plaintiff for the same tract ; this offer also was rejected, and an exception noted.

The plaintiff having closed his evidence here, the court directed the jury to find for the defendants ; to which direction an exception was taken and noted.

The verdict was for the defendants, and judgment was entered on it January 20th 1866.

The plaintiff removed the case to the Supreme Court ; and assigned for error the rejection of his evidence, and the charge of the court.

*A. V. Parsons,* for plaintiff in error, cited Foster *v.* McDivit,

[Wells *v.* Smyth.]

9 Watts 344; Foust *v.* Ross, 1 W. & S. 505; Hubley *v.* Keyser, 2 Pa. R. 501; Stewart *v.* Shoenfelt, 13 S. & R. 360; Laird *v.* Hiester, 12 Harris 462; Cuttle *v.* Brockway, Id. 146; Miller *v.* Hale, 2 Casey 434, 437.

C. A. *Mayer*, for defendants in error, cited The Mayor, &c., of Philadelphia *v.* Riddle, 1 Casey 259; Foster *v.* McDivit, 9 Watts 341; Foust *v.* Ross, 1 W. & S. 501; Hole *v.* Rittenhouse, 7 Harris 310; Hubley *v.* Keyser, 2 Pa. R. 501; Stewart *v.* Shoenfelt, 13 S. & R. 371; Cuttle *v.* Brockway, 12 Harris 147; Laird *v.* Hiester, Id. 463; Miller *v.* Hale, 2 Casey 432; McCall *v.* Lorimer, 4 Watts 351; Bratton *v.* Mitchell, 7 W. & S. 260; s. c. 1 Id. 310.

The opinion of the court was delivered, May 13th 1867, by

AGNEW, J.—It is not necessary to examine the errors assigned in detail, as the case turns on the single question, whether there was sufficient evidence of an assessment of taxes upon the land more than one year before the treasurer's sale. The learned judge in the court below thought not. In this we think he was in error. The plaintiff gave in evidence a book brought from the commissioners' office, proved by the clerk to be the assessments of Leidy township for the years 1858 to 1863, inclusive, bound together, of which one was a list of unseated lands in Leidy township for the year 1858. In it is contained this entry: " No. 3888; quantity 1100 acres; name of warrantee John Olden; valuation $1650." He next gave in evidence the commissioners' minute-book, proved by the clerk, containing a resolution, dated May 14th 1858, to wit, " That Commissioners Furst, Rote and Ramage met pursuant to adjournment, and, on motion, the commissioners fixed the rate for county taxes for the year 1858 at 2½ mills (two and one-half) on the dollar, and set the following days of appeal, &c.; June 10th 1858 being the day fixed for Leidy township." A short reference to the acts relating to taxes, and the judicial decisions, will show that this was sufficient evidence of an assessment to support a sale for taxes under the Act of 1815. The 2d section of the Act of 3d April 1804 (Purd. 989) directs all unseated lands " to be valued and assessed as other property." The revised Act of April 15th 1834, relating to taxes, provides as follows: The 2d section directs the commissioners to issue their precept to the assessors, requiring them to make out and return a just and perfect list of the names of all the taxables, and of the taxable property, together with a just valuation of the same. The 6th provides, " when such *assessment* shall be completed," the assessors shall assemble at the commissioners' office to make their returns and point out errors. The 7th directs, " when the returns of the assessors shall be rectified (if necessary), the commissioners

5 P. F. SMITH—11

[Wells *v.* Smyth.]

shall proceed to *assess* the proportion of every ward, township and district, according to the adjusted valuation of the taxable property and other subjects of taxation in each ward, township and district: Provided, that no tax in any county shall in one year exceed the *rate* of one cent," &c.

The 8th requires "transcripts of the *assessments*" to be made out by the clerk and transmitted to the assessors together, with the *rate per cent.* and the day of appeal fixed. Under the 9th, the assessor gives notice to every taxable inhabitant of "the *amount or sum* for which he stands rated, and the *rate per cent.* of such amount, and of the time and place of appeal." Thus, by the terms of the law, the taxable or his property is assessed when the assessor has returned his list of property and valuation thereupon, and the commissioners have apportioned the rate per cent. upon the several townships. It is after this, a transcript (or copy) of "the assessment" is remitted to the assessor, and the taxable is notified he may appeal.

In this case we have the assessor's return of the tract and the sum at which he assessed its value, and the rate per cent. fixed by the commissioners upon the several valuations, and a day for the appeal. This was sufficient evidence of an assessment to support the sale according to all the authorities; to this we must add the warrant and schedule of lands and taxes from the commissioners to the treasurer which were rejected by the court.

The Act of 12th April 1842, which is remedial in◆ all its provisions (Purd. 991, pl. 8), declares that "all records of the county commissioners charging lands as unseated with arrears of taxes shall be evidence of an assessment."

In Bratton *v.* Mitchell, 7 W. & S. 259, the only evidence of an assessment was a paper found in the commissioners' office, headed "A list of unseated lands in Wayne township, 1820." Chief Justice Gibson, remarking upon this paper, said, "These lists contain the valuation of the assessors, and it is known that they are prepared for the action of the commissioners whose business it is to assess the tax." "There cannot be a doubt that the paper was used at least for the rough draft of an assessment. The fair copy, if it was made, is not to be found among the official papers; and what is the best evidence of the course pursued by the commissioners? Certainly the prints of their footsteps are visible in the office. What is essential to the title is that there should have been an *actual assessment* by the commissioners, whether formal or informal, right or wrong; and, if the witnesses are to be believed, this paper is very sufficient evidence of it." In Crum *v.* Burke, 1 Casey 381, Lewis, C. J., refers to Bratton *v.* Mitchell, saying, it was held that a *treasurer's-sale book* was not evidence of an assessment of taxes; but when the case came up again, it was decided that a loose paper

[Wells v. Smyth.]

from the *commissioners'* office, purporting to be an assessment for taxes, was competent evidence. He therefore held that a list of unseated lands from the commissioners to the treasurer containing the tract with a county and road tax charged upon it, in the handwriting of one of the commissioners, and in which the treasurer made his sale, was competent evidence of an assessment.

In the first case of Bratton v. Mitchell, 1 W. & S. 313, Judge Huston defines distinctly what he considers is an assessment. " The assessor values and returns to the commissioners, who apportion the sum to be raised in the township on the several tracts—in fact, who perform the most important part of the assessment. The list returned to them, and their action on it, is the assessment." In the case of Miller v. Hale, 2 Casey 435, the principle of this case is well stated by Graham, P. J.  " If there was any evidence to show that the land had been returned and a value put upon it one year prior to the sale, from which the tax could be ascertained by calculation, by reference to the mill rate for state and county purposes on unseated lands during the years for which the taxes had been paid on the unseated lands, we would sustain the assessments and the sale." As to the manner of proceeding, Lowrie, J., said, in Laird v. Hiester, 12 Harris 462, " The forms in which the assessments of unseated lands are made and entered, and the mode of certifying or transmitting them to the county treasurer, are matters of official practice, entirely at the discretion of the commissioners of the several counties, subject only to the condition of their being intelligible; and must be expected to be very various."

The liberality with which this court has viewed these proceedings may be seen also in Hubley v. Keyser, 2 Pa. R. 496, and Fager v. Campbell, 5 Watts 287.

The court below was in error in rejecting the warrant of the commissioners to the treasurer and schedule attached. Judge Lewis's opinion of the effect of that schedule has been noticed: Crum v. Burke, *supra*. The court rejected it because it did not state the year when the tax was assessed. But this had already appeared in the assessor's duplicate and the commissioners' minutes of 1858. The schedule came in aid of them, if any were wanting. There was ample evidence, therefore, of an assessment of county taxes on No. 3888, warranted to John Olden, for the year 1858. This was sufficient to support the sale.

The judgment is reversed, and a *venire facias de novo* awarded.