SIGMUND ROTHSCHILD v. JOSIAH W. BEGOLE ET AL.

*Contract—Liability for taxes—When "assessed."*

A timber contract provided for the payment by the vendee of all legal taxes thereafter to become due on the land and timber, subject to the provision that upon the service by the vendee upon the vendor of a notice that he had cut and removed from the land all of the timber he desired, and that he released all rights under the contract, the vendee should be released from the payment of any taxes assessed after the service of such notice upon the lands listed therein. And it is held that the word "assessed," as used in said contract, includes all steps necessary to be taken in the legitimate exercise of the power of taxation;

that the mere listing of the lands for the purpose of taxation is not a completed assessment; and that the service of said notice after the listing of the lands in April for taxation, and before the meeting of the board of supervisors in the following October, and the ascertainment of the amount of taxes to be assessed, relieved the vendee from the payment of the taxes thereafter assessed for said year upon said lands.[1]

Case made from Wayne. (Carpenter, J.) Argued May 2, 1895. Decided May 21, 1895.

*Assumpsit.* Plaintiff assigns error. Affirmed. The facts are stated in the opinion.

*Keena & Lightner,* for appellant.

*D. F. Glidden,* for defendants.

Long, J. Plaintiff was the owner of an undivided one-third interest in certain pine timber lands, and on March 9, 1887, he made a contract with defendants to sell them the timber on the lands. Under this contract, defendants were allowed till March 9, 1898, to remove such timber. The contract provided that the defendants "shall from time to time, and in due season, pay all the legal taxes which may hereafter become due on said premises, land, and timber, unless released as herein specifically provided." The contract also provided that—

"Whenever said second parties shall serve a written notice on said first party, declaring that they have cut and removed all the pine timber they desire from the lands listed and described in said notice, and thereby releasing said lands and all timber remaining thereon back to said first party from all rights under this contract, that thereupon said second parties shall be released from paying any taxes which may be assessed, after the

[1]The question when taxes on land become a lien or incumbrance is the subject of annotation to *Craig v. Sumners* (Minn.), 15 L. R. A. 236.

date of serving said notice on said first party, on the lands listed and described in said notice."

On July 10, 1889, July 21, 1891, and May 31, 1892, notices were given by the defendants, as provided by the contract, that the timber had been taken off the land upon certain lists contained in the notices. The taxes were not paid by the defendants for those years upon the lands contained in those lists. Plaintiff paid those taxes, and brings this action to recover the amount so paid, contending that, under the contract, the defendants were bound to pay them.

Those lands, under the tax law, were listed for taxation in the month of April of each year. Plaintiff contends that the clause of the contract above quoted compels the payment by the defendants, although the notices were given before the taxes became a lien on the land; that they were only to be released from paying any taxes which were assessed after the date of serving said notices; and that such taxes were assessed before the notices were given.

We think the word "assessed," as used in the contract, can have no such restricted meaning. It includes all the steps necessary to be taken in the legitimate exercise of the power of taxation. The mere listing of the lands for the purpose of taxation is not a completed assessment. No amount has as yet been ascertained to be a charge upon the land, and in fact no amount has been ascertained until the board of supervisors meet, in the month of October following. As was said by this Court in *Harrington v. Hilliard*, 27 Mich. 271:

"When thus equalized by the board, the roll is again delivered to the supervisor, with a certificate of the amount of the various taxes to be raised in his township; and the supervisor, between that time and the first Monday in December, is required to apportion the amount and impose the taxes according to such equalized valuation, and to place the roll in the hands of the township treasurer for collection; and it is from this date that the statute declares the taxes upon real estate to be a lien

thereon. It is therefore clear that up to this time there
is no tax upon the land which can be paid by or to any
one, * * * and the land is just as clear from
any charge or lien on account of the taxes to be assessed
for the current year as it is from those of any future
year. * * * There is simply a liability to future
taxation. * * * But though it is clear the stat-
ute makes these taxes, after they are imposed and the
roll has gone into the hands of the treasurer for collec-
tion, a charge upon the person owning the land on the
second Monday in May, it does not make them a charge
from that day, nor until the taxes have been imposed.
Until then there is no charge nor any duty to pay, as no
such taxes yet exist."

Speaking further upon the subject of the listing to be
made in May, it was said:

"This, though called an 'assessment roll,' is but a list
of the taxable persons and the property and its valuation
in the township."

The tax law itself (Act No. 153, Laws of 1885) seems
to provide when the assessment is to take place, as sec-
tion 26 provides that the supervisor of each township,
after the certificates are made by the board of supervis-
ors in October, "shall proceed to assess the taxes appor-
tioned to his township."

In *Wells v. Smyth,* 55 Penn. St. 159, the court follows
the definition of assessment as laid down in *Bratton v.
Mitchell,* 1 Watts & S. 313, as follows:

"The assessor values and returns to the commissioners,
who apportion the sum to be raised in the township on
the several tracts,—in fact, who perform the most
important part of the assessing. The list returned to
them and their action on it is the assessment."

See, also, *State v. Fournet,* 30 La. Ann. 1104.

When these notices were given, there was no assess-
ment of taxes on the lands so released. There had been
no tax extended, and in fact could not be until the meet-
ing of the board of supervisors in October following.
The parties, at the time the notices were given, could not
have ascertained by any mode the amount to be paid.

No amount was at that time assessed. The court below was correct in holding that no recovery could be had.

The judgment below must be affirmed.

The other Justices concurred.