POLI *v.* JACOBS.

1. LANDLORD AND TENANT — LEASE — CONSTRUCTION — RENT — ES-
TOPPEL.

Where landlord and tenant mutually agreed upon an ex-
tension of an existing lease, and it was stipulated by
an addition to the instrument that in case the lessor's
tax assessment was increased at a date specified, the rent
should be increased by three per cent. of the additional
valuation, and it appeared that the lessor, being sub-
jected to an increase in the assessed valuation, wrote to
the tenant stating the amount to be paid in addition to
the previous rental, and where he had received the same
over a considerable interval, the landlord and his grantee
were estopped to set up a mistake in the sum claimed
which had been discovered by the lessor soon after send-
ing the communication to the lessee without having made
any objection or notification to the latter: the grantee of
such landlord was not entitled to cancel the lease be-
cause he claimed the premises were being occupied for a
different purpose than that authorized by the contract,
his grantor having accepted rentals for a long period of
time with knowledge of the use to which the premises
were being put.

2. SAME—CONTRACTS—TAXATION.

And under the agreement that May 1st be fixed as the
date when the rent should increase if a change in assess-
ment occurred, the valuation for that year, not taking
effect until May 5th, could not be considered in fixing the
rental.

Appeal from Wayne; Mandell, J. Submitted
January 31, 1913. (Docket No. 41.) Decided Octo-
ber 1, 1913. Rehearing denied January 5, 1914.

Bill by Louisa Poli against Abraham Jacobs and
Julius Stroh for a decree of interpleader. Certain
claimants intervened. From a decree for defendant
Jacobs, said Stroh appeals. Affirmed.

*Alex. J. Groesbeck,* for appellant Stroh.

*Lucking, Emmons & Helfman,* for appellee Jacobs.

McALVAY, J. A bill of interpleader was filed by the principal complainant and others intervening, all being subtenants of portions of a certain building in the city of Detroit under leases from defendant Jacobs. The purpose of this litigation was to determine which of the defendants was entitled to the rentals due from said tenants. The court made an interlocutory decree ordering all tenants to pay rentals into court, and that defendants Jacobs and Stroh interplead and settle the dispute between them. Upon a hearing between the interpleaded defendants, a decree was entered in favor of Jacobs. Defendant Stroh has appealed. The material facts in the case are undisputed.

The premises in question are known as Nos. 232 and 234 Randolph street, Detroit. On June 1, 1904, John McKibbon, owner of these premises, executed duplicate leases of No. 232 Randolph street to the defendant Abraham Jacobs for a period of five years and two months, commencing March 1, 1905, for a monthly rental of $175. On June 10, 1904, he executed similar leases to defendant Jacobs of No. 234 Randolph street for the term of five years and six months, commencing November 1, 1904, at a monthly rental of $125. The terms of both leases were arranged to expire May 1, 1910. These leases did not limit the lessees' right to assign or sublease. Defendant Jacobs entered into possession of these premises under said leases at the beginning of the terms and paid $300 per month rent for the full terms of the same.

During the year 1909, probably late in the year, defendant Jacobs asked McKibbon for an extension of the leases. He gave his consent and interlined the following words in each lease, "with the privilege of

five years more," which was not contained in the leases as originally drawn and executed by the parties. At or about the same time and in consideration of such extension, as McKibbon claims, there was indorsed on the back of his copies of said leases the following:

"The party of the second part also agrees that if on the 1st day of May, 1910, the assessment for taxes on the property has been increased from the rate assessed at the time this lease was dated, to pay 3 per cent. annually on the amount of such increase."

It is undisputed that these indorsements and interlineations were never signed by either of the parties, and Jacobs and McKibbon disagree as to the circumstances surrounding the 3 per cent. memorandum.

On April 26, 1910, McKibbon wrote Jacobs the following letter:

"DETROIT, MICH., April 26, 1910.

"MR. JACOBS,

"*Dear Sir:*

"According to the terms of your lease of the premises 232 and 234 Randolph street with the renewal of the lease after five years an increase of 3 per cent. per annum it was agreed should be added to the rent of whatever difference should have been made in the assessment on the property between 1905 and 1910, the assessment for 1905 was $46,930, the assessment for 1909 was $57,580, an increase of say $10,000. Will you therefore, commencing May 1st, make the monthly checks $325 instead of $300 according to agreement, and oblige.

"Yours truly,

"JOHN McKIBBON."

Accepting the terms of this letter, Jacobs sent his monthly check for $325, beginning May 1, 1910, and continued the monthly payment of such amount to him by check until January 1, 1911. All of which checks were received and accepted by McKibbon.

On February 1st Jacobs sent a check of like amount for that month and on that date received a letter from McKibbon informing him that he had sold the property to defendant Stroh and had forwarded this check to Stroh. Afterwards Stroh telephoned Jacobs in regard to the matter and met him at his office, where he claimed $49 per month additional rental, making a total of $374 per month. This amount was fixed by Stroh by subtracting the 1904 assessment of $42,270 from the 1910 assessment of $71,700 and computing 3 per cent. thereon. He also claimed 3 per cent. on any subsequent increase of assessment, all of which claims Stroh reduced to writing, by letter sent to Jacobs on the following day:

"DETROIT, Feb. 9, 1911.

"MR. A. JACOBS,
    "120 Jefferson Ave.,
            "Detroit.
"*Dear Sir:*
    "Referring to my talk with you yesterday in relation to the rent payable for the stores on Randolph street, known as Nos. 232 and 234, I find that under the leases to you executed on the 6th and 10th of June, 1904, respectively, the rent will amount to $300 per month, together with 3 per cent. on the additional assessment from 1904 that was put on this property, which increase now amounts to $29,700. The total rent therefore payable to me under the leases will amount to $374 per month, until a further change should be made in the assessment, and until the present leases expire.
    "I would therefore thank you for an additional check for $49, to cover the rent for February, inasmuch as your check to Mr. McKibbon, and mailed to me by him amounts to only $325.
    "Hoping you will comply with the above, I am,
                    "Yours respectfully,
                            "JULIUS STROH."

A dispute arose between the parties over these matters, which was not adjusted. Stroh threatened

177 MICH.—16.

to cancel the leases and Jacobs under protest in writing paid the extra amount demanded for four months. He then brought suit in justice's court to recover such sums as paid under duress. He failed to recover in this suit and afterwards tendered Stroh $325 each month and refused to pay more. Defendant Stroh then attempted to cancel the lease and notified the tenants to pay no more rents to Jacobs. Stroh gave complainant Poli notice to quit and similar notice was given by Jacobs to another tenant. Proceedings were instituted by each of these defendants before a circuit court commissioner to oust these tenants. The bill of interpleader was filed because of these complications.

The dispute between the parties is narrowed to the question of the construction of the agreement entered into between McKibbon and Jacobs at or about the time of the extension of the leases relative to the increase in the amount of the rent to be paid by defendant Jacobs.

It is claimed by appellant Stroh that, the premises having been occupied for purposes other than those named in the leases, there was a forfeiture of the leases. Such contention cannot be sustained for the reason that from the beginning it was well known to the owner, McKibbon, that these tenants were not occupying for the purposes named in the leases, and for all the years after until the sale of the property to defendant Stroh he received and accepted the rent from month to month without any objection that the premises were occupied for purposes other than those named in the leases. The indorsements upon the leases by McKibbon for the increase of the rent were acquiesced in by defendant Jacobs, and it may be said that there is no dispute but that in consideration of the extension of the leases for a term of five years this agreement was entered into. It was written by McKibbon at that time. Not long after, and

before the change in rentals was to take effect, he wrote the letter of April 26th, which was received by defendant Jacobs and acted upon by the payment of the amount demanded monthly from that date until February 1, 1911. This letter is the construction of this agreement for an increased rental which McKibbon gave in writing to Jacobs. It is claimed by appellant that in writing this letter McKibbon was laboring under a mistake, and that he intended to give the increase of the assessment on this property for the year 1910. The agreement reads:

"The party of the second part also agrees that if on the 1st day of May, 1910, the assessment for taxes on the property has been increased from the rate assessed at the time this lease was dated, to pay 3 per cent. annually on the amount of such increase."

McKibbon says that he discovered in July following that he had not used the 1910 assessment in estimating the increased rental. He did use and had before him at the time his tax receipt for 1909 showing the assessment for that year. When he discovered this fact he said nothing to Mr. Jacobs, and he made no claim to him that the rentals were not increased exactly in accord with the agreement between the parties and continued to accept from him $325 on the 1st of each month thereafter until the 1st of February, 1911, which last check he turned over to his grantee, defendant Stroh. McKibbon gave this paragraph a construction which has been accepted and acquiesced in by Jacobs. Furthermore, McKibbon, after knowledge came to him of all the facts in regard to the assessment for 1910, raised no question whatever about the accuracy of the letter of April 26th but received rent from his tenant as demanded until February 1, 1911, and he never made any claim to Jacobs that an increase in rent had not been made according to the terms of the agreement.

He and his grantee are estopped from questioning such construction.

The construction given by the parties is the true legal construction to be given to this paragraph. There is no ambiguity in this writing. May 1, 1910, was fixed in it as the date to which increased assessments could be considered. The assessment for the year 1909 next preceding was the last assessment made before that date. The assessment for 1910 was not legally in effect until May 5th of that year. *Rothschild* v. *Begole*, 105 Mich. 388 (63 N. W. 309), and cases cited.

The decree of the circuit court is affirmed, with costs of this court to defendant Jacobs.

STEERE, C. J., and MOORE, BROOKE, KUHN, STONE, and BIRD, JJ., concurred. OSTRANDER, J., did not sit.