## Elisha Harrington v. Lauren P. Hilliard and another.

*Taxes: Real estate: Vendor: Vendee.* Under our statutes, state, county and township taxes upon real estate become a lien upon the land from the first Monday in December of the year in which they are assessed and not before; and as between vendor and purchaser under a warranty deed, the obligation is upon the vendee to pay the taxes for the current year where the conveyance is prior to that date, and upon the vendor where it is subsequent.

*Real estate: Taxes: Charge upon the owner: Statute construed.* The provisions of the statute *(Comp. L. 1871,* § *1006)* making the taxes upon real estate a charge against the person owning the same, on the second Monday of May, of the year in which they are assessed, construed in connection with previous statutes *in pari materia* and the general nature of our system of imposing and collecting taxes, and held to have been intended only as a cumulative remedy on behalf of the state, and not to make the taxes a charge upon the person or the land prior to the first Monday in December, when, for the first time, they exist as taxes, and the opportunity is offered, or the duty arises, to pay them. This provision does not affect the question of the obligation to pay the taxes as between vendor and purchaser.

HARRINGTON *v.* HILLIARD.

*Practice in supreme court.* Where a case has been submitted below upon an agreed state of facts, upon a reversal of the judgment in this court on error, no new trial will be granted.

*Heard May 7.     Decided May 13.*

Error to Wayne Circuit.

*D. C. Holbrook,* for plaintiff in error.

*Pond & Brown,* for defendants in error.

CHRISTIANCY, CH. J.

On the second Monday of May, 1871, the defendant below (plaintiff in error) was the owner and in possession of certain lands in Alpena county, and on the 31st day of October, 1871, sold and conveyed the same to the plaintiffs below by a warranty deed containing also covenants of seisin, against encumbrances, and for quiet enjoyment. The purchasers went into possession, and occupied the land on the first Monday in December of the same year.

In the month of November the state, county and township taxes of that year were ascertained, assessed and imposed upon the land, and extended upon the assessment roll, as required by law. In January following, these taxes were paid by the purchasers, to the collector of taxes (the township treasurer); and for the taxes so paid this action was brought against the vendor. The only question, therefore, is whether, as between the vendor and the purchasers, the vendor was bound to pay these taxes.

The statute requires the listing and valuation of the property upon what is denominated the assessment roll, to be made by the supervisor by the third Monday of May, and on the last named day, he is to attend at his office for the purpose of reviewing the assessment and hearing the objections of persons interested, to the valuations as made by him. This, though called an assessment roll, is but a list of the taxable persons, and the property and its valuation in the township; and after it is thus completed by

the supervisor, it is submitted to the board of supervisors, at their October session, for the equalization of the valuations in the several townships, which may alter, and generally does alter, the valuation as made by the supervisor. When thus equalized by the board, the roll is again delivered to the supervisor with a certificate of the amount of the various taxes to be raised in his township; and the supervisor, between that time and the first Monday in December, is required to apportion the amount and impose the taxes according to such equalized valuation, and to place the roll in the hands of the township treasurer for collection. And it is from this date that the statute declares the taxes upon real estate to be a lien thereon.

It is therefore clear that, up to this time, there is no tax upon the land which can be paid by or to any one (nor until about this time could the amount be in any way ascertained), and the land is just as clear from any charge or lien on account of the taxes to be assessed for the current year, as it is from those of any future year.

They cannot, therefore, in the nature of things, constitute, before that time, an incumbrance on the land. There is simply a liability to future taxation—a liability which always exists—and it can make no difference in principle, so far as relates to the question of incumbrance, whether it is liable to be taxed one month or one year or ten years hence. In the absence of any statute, therefore, giving to this liability the effect of a lien before the tax is imposed, such liability to future taxation cannot constitute a breach of any covenant in a vendor's deed, made a month before the imposition of the tax.

But it is insisted that the tax upon the land is, by the statute of 1871 (*Comp. L. 1871, ch. 21, § 40*), made a personal charge upon the person who was the owner of the land on the scond Monday of May, and makes it his duty to pay it; and that, though the treasurer is authorized to collect it from the property of the vendee who purchased it after that time and before the first Monday of December, and

27 MICH.—35.

owned and occupied it at the last named date, yet the vendor is the party primarily liable, and the vendee, in paying it, pays it for him, and may therefore recover it of him as so much paid for his use and at his request.

This section is in these words: "The taxes assessed upon any real estate of any resident or non-resident, and all legal charges made thereon, shall be a charge against the person owning the same on the second Monday of May, and shall be a lien on said real estate from the first Monday in December of the year in which such real estate was assessed; but it shall be lawful for the township treasurer to collect such taxes by distress and sale of the goods and chattels of any person who shall purchase such real estate after the second Monday in May, and occupy the same on the first Monday in December."

A hasty glance at this section, without reference to previous statutes *in pari materia*, or the general nature of our system of imposing and collecting taxes, might seem to establish beyond doubt the theory of the plaintiff below, and to make the vendor liable in the present case. But, though it is clear the statute makes these taxes, after they are imposed, and the roll has gone into the hands of the treasurer for collection, a charge upon the person owning the land on the second Monday in May, it does not make them a charge from that day, nor until the taxes have been imposed; until then there is no charge nor any duty to pay, as no such taxes yet exist, and the owner could not pay them if he would. The fair interpretation of the statute is, that they become such charge on the first Monday in December, at the same time they are declared to become a lien upon the land. This period is intended to correspond with the time when the imposition of the taxes, for all legal purposes, is to be considered as consummated, and when, for the first time, the duty to pay springs into existence for any purpose. But, though the taxes then take effect as a charge in behalf of the state upon the person who owned the land on the second Monday in May, the

real question is, whether this charge upon him, and his liability to the state, creates any duty to pay it, *as between him and these vendees*, who became the owners of the land before the taxes became a charge upon the land or the person, and before the taxes had an existence; or whether it was only intended as a cumulative remedy on behalf of the state, to enable them more speedily to collect the taxes. For the decision of this question, it is proper to consider some of the essential features of the system of collecting taxes which has prevailed in this state, and to refer to some of the statutes upon the same subject, to see by what steps or changes the section above cited assumed its present form.

Every state has its own peculiar system and mode of imposing and collecting taxes. I have not had access to enough of the statutes of the other states to enable me to trace all the features of their various systems in force when their judicial decisions were made which have been cited in the present case. But in some of the eastern states, Vermont, for instance, a system did, if it does not now exist, which treated taxes much in the light of ordinary debts between individuals, and, without making the tax a specific charge or lien upon the land taxed, or authorizing proceedings properly *in rem* against the land, authorized the collector to levy for the tax, not only upon the goods and chattels of the owner taxed, but upon any of his real estate, whether taxed or not, and to sell the same for the tax, much as is done in this state upon execution.—See *Rev. Statutes of Vermont, (Ed. of 1840), Title 19, chapter 77.* In Massachusetts the collection of taxes seems to have been placed upon a somewhat similar footing, the collector being authorized to sell the land (for want of goods and chattels) for the taxes, in a mode somewhat similar to a sale upon execution; but making the taxes a lien upon the land taxed for two years only after the taxes were committed to the collector for collection, but no longer, if the lands had, in the meantime, been sold. This lien was clearly imposed

for the benefit of the state in collecting the tax; and but for this statute the lien would not, under their statutes, have existed.    Their mode of valuation and assessing the taxes is also essentially different from ours.    The judicial decisions of those states, therefore, upon a question of this kind, can have very little bearing here.

From the first establishment of our system of taxation under the state government down to this day, taxes upon land, whether of residents or non-residents, have not only been imposed specifically upon the land—and the person of the owner when a resident—but in case of non-payment to the collector, or non-collection by him from the personal property of the resident person taxed, the proceedings for their collection have been strictly *in rem* against each specific description of the land taxed; and this, whether the owners were resident or non-resident; and, if not paid or collected, the lands were required to be returned with the taxes upon each specific description, and sold for those particular taxes and the charges thereon.    The main difference between the resident and non-resident taxes being, that as to the former, the collector was authorized to levy upon, and sell for the tax, the personal property of such resident, who owned the land at the time the listing and valuation were made in the spring (which therefore made the tax a personal charge upon him), while in the latter case, the collector,—previous to the enactment of the section now in question, at least,—could not levy upon personal property; but if the tax were not paid to the collector, the land was returned and sold, etc., as in the former case.    In other words, the proceedings from the valuation of the land and the imposition of the taxes till their final collection, have been *in rem* against the land itself, as well as against the owner or person taxed, if the latter were a resident.    And no express provision making the tax a lien was ever necessary under this system, to make it a lien, so far as the rights of the state or the public were concerned; as this was the necessary effect and direct result of the system

itself. Nor was there ever a time in this state when the rights of the public or the state, to enforce a payment from the land itself, were in any manner affected by the sale, or any number of sales of the land.

But, as such sales might frequently take place, and the rights of successive owners, *as between themselves*, might depend upon the question whether there was any tax upon the land when it was conveyed, in other words, whether the tax had in effect been imposed and become a charge upon the land while it belonged to the vendor (and, therefore, ought, as between them, to be paid by him), or whether it was imposed and became a lien after the conveyance to the vendee, and therefore ought to be paid by the latter, and there might be difficulty in showing the precise time when the supervisor had actually completed the imposition and carrying out of the tax upon the roll; it was thought judicious expressly to declare and fix by the statute a certain day when the tax should, for this purpose, be considered as taking effect as a lien upon the land. Accordingly in 1842 (*Laws of 1842, p. 90, § 21*) it was, for the first time, expressly provided that, "The taxes assessed upon any real estate of any resident or non-resident, and all legal charges made thereon, shall be a lien on said real estate from the first day of November of the year in which such real estate was assessed." This corresponded very nearly, though not exactly, with the time when the warrant was required to be given to the township treasurer for the collection of the tax, which was the first Monday of November. This provision was continued in the revision of 1846, in the same words (*chapter 20, § 36*) and the warrant for collection was required to be given to the township treasurer between the 25th of October and the first of November (*sections 32 to 34 inclusive*). The same provision, in the same words, was contained in the law of 1853 (*Sess. L. 1853, p. 140, § 38; Comp. L. 1857, § 820*). This statute, it is true, did not require the warrant to be delivered by the supervisor to the treasurer until the 15th day of November; but all the

data to enable the supervisor to impose and extend the taxes were required to be put into his hands in October, and he was thereupon to proceed to extend and impose the taxes, which could readily be calculated and ascertained from those data.    But by section 38 of the act of 1858 (*Sess. L. 1858, p. 183*), the time when the lien was declared to take effect was changed to the fifteenth day of November, and here occurs for the first time the provision expressly making the taxes a charge against the person owning the land in the spring, in the same words as found in the act of 1869, and the amendment of 1871, except that the charge is upon the person owning the land on the second Monday in April.

From the first provision expressly making the tax a lien, in 1842, down to the time of the act of 1858, expressly making the tax a charge upon the person owning the land in the spring, when the valuations were made, we suppose no lawyer in the state ever doubted that the purpose of the provision making the tax a lien upon the land, was to settle the question, as between successive owners of the land, which of them ought to pay the tax; all agreeing that, if conveyed before the day when the lien was thus made to attach, the vendee must pay the tax of that year.    The provision was required for no other purpose, and could take effect in no other way.    No other purpose, therefore, can be assigned for its enactment.    So far as the rights of the state and the public were concerned, the tax, after it was imposed, had always been under our system a lien upon the land; and the owner when the land was taxed in the spring, or the person taxed, had always been liable personally for it, as between him and the public; but this fact in no way made him liable, as between himself and his vendee, if he conveyed the land before the lien attached.    The state may adopt cumulative remedies against both vendor and vendee, as well as against the land, without affecting the rights of successive owners, as between themselves.    And up to 1858, if the taxes in a case like the present, were

collected of the vendor, we see no reason to doubt his right to recover the amount of the vendee.

The provision for a lien has been continued down to the present time, but since 1858, it is found in a section which is prefaced by the provision making the taxes a charge, substantially as we find it still in the act of 1869, as amended in 1871.

We are now to inquire what is the effect of this provision making the taxes a charge against the person, whether resident or non-resident, who owned the land on the second Monday in May.

As against a resident owner, owning the land in the spring when the listing and valuation were made, or the person taxed, the taxes subsequently assessed for that year had always been a personal charge, as between him and the public, and might be collected of him by distress and sale of his goods, though he might afterwards have sold it before the tax was imposed. No express provision was necessary, therefore, to make it a charge as to him; and, as to him, this provision would therefore have no effect. But it had always been otherwise as to the non-resident owner; as to him, the tax had always been against the land, and not a charge against him personally. The collector, therefore, could not levy upon his personal property for the tax, whatever amount of it he might find in the township. As to him, therefore, some such provision was necessary to effect this object, and to place the resident and non-resident, in this respect, upon the same footing; and this, we are satisfied, was the real and only object of the provision, and it can only properly take effect in this way. It is unnecessary to inquire how far this object can be carried into effect, though, taken in connection with the other provisions of the tax law of 1869, it gives the township treasurer the power to assume the risk of ascertaining such ownership of the land on the second Monday of May, and to make the levy upon the personal property of such owner. Whether he could be compelled to decide the question of

the title to the land, and to make the levy upon the personal property in such case, is another question which we need not here decide; but in this respect the provision involves the same questions involved in the amendment of 1871, authorizing the treasurer to levy upon, and sell for the tax, the personal property of an owner of real estate purchased by him between the second Monday of May and the first Monday of December.

We are entirely satisfied that the provision making the tax a lien upon the land from a certain day was enacted for the purpose of fixing the period upon which the liability of the successive owners, as between themselves, to pay the tax, was to depend; and that the superadded provision, making the tax a charge upon the person of the owner, does not alter its effect in this respect.

Much reliance was placed by the counsel for the defendants in error, upon the decision of the New York court of appeals, in *Rundell v. Lakey, 40 N. Y., 513,* where the majority of the court laid down a rule which, if their statutes and course of legislation were the same as ours, would hold the defendant below liable in this case. Not having access to all the statutes of New York, we are not able to say how far the reasoning in that case would be applicable; but we think it will be found that the course of their legislation upon this question has been so different from ours as to make the decision inapplicable.

The judgment of the circuit court must be reversed, with costs; and as that judgment was based upon an agreed state of facts, no new trial can properly be granted.

The other Justices concurred.