KING v. SCHOOL DISTRICT NO. 5.

1. SCHOOLS AND SCHOOL DISTRICTS—GOVERNMENTAL AGENCY.
    School district is not true body corporate exercising functions as such, but is only *quasi*-municipal corporation—merely State agency carrying out distinctively governmental work of education.

As to validity of tax sale of land acquired by public corporation after levy and before sale, see annotation in 2 A. L. R. 1535; 30 A. L. R. 413.

2. TAXATION—TAX DEEDS—STATE LANDS.

    Auditor general had no authority to issue to private purchaser tax deeds covering lands bought by school district and used for school purposes after assessment of tax thereon but before they were bid in to State for delinquent taxes, since said lands belonged to State and were used by it through its governmental agency at time they were bid in.

3. STATES—MAY NOT BE DIVESTED OF PROPERTY BY NEGLIGENCE OF OFFICERS.

    State may not be divested of its property by negligence of its officers and servants.

4. TAXATION—TAX DEEDS—TAX DECREE AGAINST STATE LANDS.

    Although auditor general had no authority to issue to private purchaser tax deeds covering lands already owned by State at time they were bid in to State for delinquent taxes, tax decree is not void, and should said lands be conveyed to private owner, it could be enforced.

5. SAME—PROPER REMEDY FOR PURCHASER OF TAX DEED ON STATE LANDS.

    Where auditor general's deed is void because covering lands already owned by State at time they were bid in for delinquent taxes, purchaser is not entitled to writ of assistance, but auditor general, on proper demand, should cancel said deed and refund money paid therefor.

Appeal from Macomb; Reid (Neil E.); J. Submitted October 26, 1932. (Docket No. 20, Calendar No. 36,578.) Decided March 1, 1933.

Petition for writ of assistance by Ray E. King against School District No. 5, Township of Warren, Macomb County, to obtain possession of lands. Writ denied. Plaintiff appeals. Affirmed.

*King & Andrews* (*Dayton W. Closser*, of counsel), for plaintiff.

*Austin & Newman*, for defendant.

FEAD, J. March 31, 1925, a special highway assessment, in proceedings instituted by the State

highway department, became a lien on the property here involved. Twelve lots, upon each of which the tax was $13.29 or $13.30, then privately owned, were purchased by defendant school district, on warranty deed, at times from April 2d to June 1, 1925. The taxes not being paid, they were returned delinquent, included in the tax decree of 1928, sold and bid to the State in May, and later purchased by plaintiff from the State and certificates of purchase issued to him. Defendant and its attorneys, not its present counsel, knew of the sale in June, 1929, and asked the auditor general to cancel plaintiff's certificates, which was not done. Plaintiff received his tax deeds in October, 1929. Thereafter he gave the usual notice of reconveyance, and, after the period of redemption had expired, filed this petition for writ of assistance, which the court denied.

It was stipulated that defendant paid about $12,000 for the lots, erected a school building thereon at a cost of $75,000 in 1925 or 1926. The building was in use for school purposes in September, 1926, and has been so used ever since; and defendant did not pay the tax, on advice of counsel that the property became exempt from tax proceedings when conveyed to defendant.

Defendant relies on *Graham* v. *City of Detroit,* 174 Mich. 538 (44 L. R. A. [N. S.] 836), in which it was held that the purchase or condemnation of lands for highway purposes, upon which taxes have become a lien or after the assessment is completed, deprives the auditor general of authority to sell them for taxes because—

"These easements belong to the State, and were in use as public highways at the time they were bid in to the State for delinquent taxes.

"The defense that plaintiff acquired no title to these lands through the State tax deed issued by the auditor general is not a collateral attack upon the decree in the tax proceedings. It challenges the power and authority of the auditor general in the name of the State to issue deeds to lands in which the State had already acquired easements for the public use as part of its public highways."

Plaintiff relies on *Iron Mountain Public Schools* v. *O'Connor,* 143 Mich. 35, and *Triangle Land Co.* v. *City of Detroit,* 204 Mich. 442 (2 A. L. R. 1526). In *Triangle Land Co.* v. *City of Detroit,* both the other cases were noted and the court held valid a tax sale and proceedings thereon, where the city had purchased the lands, after the assessment roll had been confirmed, and immediately erected a fire hall upon them. In refusing to apply the ruling in the *Graham Case,* the court said:

"The obstacle to applying that rule in the instant case is that the State had no right, title, easement, or interest in, or control over, these lands. The city had bought them from private owners for municipal purposes, and was not acting for the State in its exclusive possession and control of the property for a municipal purpose. To hold that the city was acting as an agent of the State in the ownership and control of property devoted exclusively to one of its local municipal activities would be to overturn the doctrine for which cities have strenuously and successfully contended under the ægis of home rule and right of local self-government since early in the history of the State. Education and highways for the use of the people of the State at large are held to be matters of general State concern and control, while the fire departments and other purely local functions of municipalities are not."

Later it was held that the city could not even recover compensation for improvements. *City of Detroit* v. *Triangle Land Co.,* 207 Mich. 49.

The *Graham* and *Triangle Land Company Cases* are readily distinguishable from each other on the point that the one involved property devoted to State governmental purposes, while the other concerned land used for purely local municipal purposes.

The *Iron Mountain Case,* as reported, cannot be fitted snugly into either of them. It involved school lands. It is not disputed by counsel that a school district is not a true body corporate exercising functions as such, but is only a *quasi*-municipal corporation, merely a State agency carrying out the distinctively governmental work of education. *Attorney General, ex rel. Kies,* v. *Lowrey,* 131 Mich. 639 (affirmed 199 U. S. 233 [26 Sup. Ct. 27]); *Whitehead* v. *Detroit Board of Education,* 139 Mich. 490; *Daniels* v. *Board of Education of Grand Rapids,* 191 Mich. 339 (L. R. A. 1916 F, 468); *MacQueen* v. *Port Huron City Commission,* 194 Mich. 328. In the respect of involving lands purchased for State governmental purposes, the *Iron Mountain* decision would fit into the *Graham Case.* On the other hand, it held that purchase by a school district for school purposes after the assessment roll had been completed did not exempt the lands from the taxes for that year, and denied a petition to vacate the tax decree and deeds issued thereon. In respect of denial of the petition, it falls within the *Triangle Land Company Case.*

The difficulty with the *Iron Mountain Case* was in its presentation. Reference to the briefs will show that the only question presented was whether the land became relieved of the taxes after the purchase

by the school district. Counsel assumed that, if it did not, the land would be subject to decree and sale as though privately owned. The court decided only the point presented, and, without examination or discussion, adopted the assumption of counsel upon the remedy. In view of this situation, we think the case is authority only upon the point urged by counsel.

It will be noted that the *Graham Case* only voids the sale by the auditor general, not the tax decree. If the land should be conveyed to a private owner after decree, sale could be had.

In our opinion, the *Graham Case* controls, and the sale by the auditor general to plaintiff was without authority. This ruling is in accord with substantially unanimous authority elsewhere (48 L. R. A. [N. S.] 707; 2 A. L. R. 1535; 30 A. L. R. 413, notes); and with the familiar principle that the State shall not be divested of its property by the negligence of its officers and servants.

Under the *Iron Mountain Case*, the taxes have not been canceled or voided. Defendant made no offer to pay them nor reimburse plaintiff. We regret that the conditions of the pleadings will not enable us to decree payment of the taxes by defendant in this suit. The proper procedure seems to be for the auditor general to cancel plaintiff's deeds, if he demands it, refund his money, and charge the taxes back with ultimate charge against defendant.

Decree affirmed, but without costs.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.