**UNITED STATES of America,
Plaintiff,**

v.

**STATE OF MICHIGAN et al., Defendants.
Civ. A. No. 36447.**

United States District Court,
E. D. Michigan, S. D.

July 20, 1972.

Robert A. Rosenberg, Chief, Civil Div., U. S. Atty., for plaintiff.

Richard R. Roesch, Asst. Atty. Gen., State of Mich., Robert P. Allen, Corp. Counsel, Oakland County, Mich., for defendants.

OPINION

TALBOT SMITH, District Judge.

The case before us comes to us upon stipulation for summary judgment. It involves yet another facet of the increasingly complex federal-state relationships.[1] Specifically, it relates to the payment of certain taxes for county and school purposes levied upon property in the City of Southfield, Michigan. The question, however, is not merely of local concern. As the United States points out in its Memorandum "The importance of this issue becomes evident when it is understood that within the State of Michigan there are a number of major projects, including Hiawatha National Forest, Pictured Rocks National Lakeshore, Sleeping Bear Dunes National Lakeshore, St. Croix National Scenic Riverway, and Apostle Island National Lakeshore, requiring the future acquisition of well over 100,000 acres of land".

What happened in the matter before us is this: The United States purchased a parcel of land located in the City of Southfield, Michigan on November 21, 1968. Ten days later, December 1, 1968, the *ad valorem* property taxes for county and school purposes became due and payable. These taxes were not paid and remained delinquent for the statutory period. The parcel of land was then put up for tax sale during May, 1971.

The principal issue before this Court concerns the interpretation of Michigan's General Property Tax Statutes, M.C.L.A. § 211.1 et seq. Specifically at issue is whether real property is encumbered with a tax liability prior to its due date, December 1, and subsequent to the tax day, December 31 of the preceding year.

All parties have stipulated to the entry of an injunction that will permanently prevent the defendants from selling, conducting a sale, executing any lien or otherwise engaging in foreclosure procedures against the property in question.

1. Turner, J., Federal-State Cooperation in Tax Adm., 9 Wm. & Mary L.Rev. 958 (Summer, 1968).

Additionally, however, the United States asks this Court to enter a declaratory judgment voiding any and all tax liens against the parcel of land. The defendants' joint position is that such additional relief should be denied, arguing that such tax liens are consistent with Michigan's property tax statutes and case law.

■ We start with the proposition that local law must be consulted to determine questions of lien liability, Collector of Revenue Within and For City of St. Louis, Mo. v. Ford Motor Co., 158 F.2d 354 (8th Cir. 1946). Although where a federal right is concerned, federal courts "are not bound by the characterization given to a state tax by state courts or Legislatures, or relieved by it from the duty of considering the real nature of the tax and its effect upon the federal right asserted". Carpenter v. Shaw, 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478 (1930), quoted in United States v. Allegheny County, Pa., 322 U.S. 174, 184, 64 S.Ct. 908, 914, 88 L.Ed. 1209 (1943).

The relevant statutory provisions (so far as pertain to the issue before us) are these: The taxable status of real[2] and personal[3] property must be determined each December 31, which is deemed the tax day. During March of the following year, the assessment made by the local assessing official is subjected to examination by a local Board of Review.[4] That examination and review of the assessment roll is concluded by endorsement upon the assessment roll of "a statement to the effect that the same is the assessment roll of said township for the year in which it has been prepared, and approved by the board of review".[5] During April of every year, the board of commissioners of each county equalizes the assessment rolls of the local units, i. e. townships and cities, within their county.[6] In May, the State Tax Commission, sitting as a State Board of Equalization, "equalizes" the 83 counties of the state.[7] Pursuant to charter provisions, the cities' portion of the *ad valorem* taxes is collected during July and August.

County boards of commissioners apportion county and township taxes during their October session.[8] Local township supervisors thereupon must prepare a tax roll, and annex thereto a warrant commending the local treasurer to collect the taxes shown on the tax roll.[9] The tax roll must be delivered to the treasurer on or before the first day of December[10] and immediately the treasurer "must proceed to collect such taxes".[11] These taxes (pursuant to statute) have been "a debt due to the township, city, village and county"[12] since the preceding December 31, i. e., "the tax day provided for in sections 2 and 13"[13] of the General Property Tax Law. On December 1 (the day when collection commences, i. e., the "due date") "the amounts assessed (on any interest in real property) shall * * * become a lien upon such real property, and the lien for such amounts, and for all interest and charges thereon, shall continue until payment thereof."[14]

2. Sec. 2 of 1893, P.A. 206, as amended (M.C.L.A. § 211.2; M.S.A. § 7.2)

3. Sec. 13 of 1893, P.A. 206, as amended (M.C.L.A. § 211.13; M.S.A. § 7.13)

4. Sec. 29, et seq. of 1893, P.A. 206, as amended (M.C.L.A. § 211.29, et seq.; M.S.A. § 7.29, et seq.)

5. Sec. 30 of 1893, P.A. 206, as amended (M.C.L.A. § 211.30; M.S.A. § 7.30)

6. Sec. 34 of 1893, P.A. 206, as amended (M.C.L.A. § 211.34; M.S.A. § 7.52)

7. 1911, P.A. 44 (M.C.L.A. § 209.1, et seq.; M.S.A. § 7.601, et seq.)

8. Sec. 35, et seq. of 1893, No. 206, as amended (M.C.L.A. § 211.35, et seq.; M.S.A. § 7.53, et seq.)

9. Sec. 42 of 1893, No. 206, as amended (M.C.L.A. § 211.42; M.S.A. § 7.83)

10. Sec. 43 of 1893, No. 206, as amended (M.C.L.A. § 211.43; M.S.A. § 7.84)

11. Sec. 44 of 1893, No. 206, as amended (M.C.L.A. § 211.44; M.S.A. § 7.87)

12. Sec. 40 of 1893, No. 206, as amended (M.C.L.A. § 211.40; M.S.A. § 7.81)

13. Ibid.

14. Ibid.

■■ Thus, on December 31 all real property in the State of Michigan is given a taxable status. Subsequent to this tax day the land takes on a new characteristic, that of carrying a tax liability which will become due and payable on December 1 of the succeeding year. This taxable status being a matter of public record constitutes notice to all future vendees.

■ The law in Michigan is explicit in stating that the enforcement of an *ad valorem* tax is an *in rem* proceeding against the property rather than the owner. Lucking v. Ballantyne, 132 Mich. 584, 94 N.W. 8 (1903); City of Detroit v. O'Connor, 302 Mich. 531, 5 N.W.2d 453 (1942). (This type of action, *in rem*, has been adopted by several legislatures in the nation as the most practical procedure of satisfying property tax liability.) These *ad valorem* property taxes are an annual exaction for the calendar year in which the assessment roll is prepared and reviewed, which exaction, as we have noted, burdens the real property and obligates the owner to respond to taxation if the property had a taxable status on December 31 immediately preceding the taxable year.

The obligation thus imposed remains incomplete or imperfect (i. e., "inchoate") until the procedure above outlined of assessment, review, equalization and apportionment has been completed, following which the inchoate obligation is converted on the first of December to a perfected lien against the property which has been assessed.

■ We think it would serve no useful purpose to explore the various Michigan holdings relative to the enforcement of *ad valorem* taxes against property acquired by the state itself, by agencies thereof (such as school districts) or by units of local government.[15] Suffice to say that although it is clear that the Michigan Supreme Court can compel payment of *ad valorem* taxes by state and local governments for the year of acquisition of real property, it has no similar authority with respect to the Federal Government. For a time the appropriate state official was authorized to cancel taxes for the current year when property was acquired by the United States before the lien date but this statute was repealed by 1967, P.A. 135, effective June 27, 1967, and will not be considered further.

In the matter before us the United States pitches its principal and controlling argument upon the question of lien. If, it says, lien has attached when the United States acquires, the taxing authority "is entitled to have the amount of such tax paid to it out of the award or purchase price," otherwise not. And, it urges, no lien had attached in the case before us at the time of acquisition by the United States. The use by the Government of the "award" *or* "purchase price" terminology, together with the Government's repeated reliance upon condemnation cases, does not promote clarity of analysis. The situations, with respect to the issue before us, are not analagous. As pointed out by the Court in United States v. 3 Parcels of Land in Woodbury Co., Iowa, 198 F.Supp. 529 (N.D.Iowa 1961):

"It would seem that another distinction should be noted between the conventional vendor-purchaser situation and a taking by condemnation. In the former situation, it is probable that in the negotiations of the parties as to the purchase price the item of taxes will be given consideration and a purchaser who is to acquire property subject to a lien for taxes will naturally pay somewhat less than an otherwise full purchase price. When the United States condemns land, the award does not include or provide for any adjust-

---

15. Illustrative cases are Iron Mountain Pub. Schools v. O'Connor, 143 Mich. 35, 108 N.W. 426 (1906); Triangle Land Co. v. City of Detroit, 204 Mich. 442, 170 N.W. 549 (1919); Graham v. City of Detroit, 174 Mich. 538, 140 N.W. 949 (1913); King v. School District No. 5, 261 Mich. 605, 247 N.W. 66 (1933).

ment because of tax liens or other liens. See, United States v. 25.936 Acres of Land, 153 F.2d 277 (8th Cir. 1946); South Carolina Public Service Authority v. 11,754.8 Acres of Land, 123 F.2d 738 (4th Cir. 1941)." 198 F.Supp. at 537.

Against this background the case of United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941) controls our decision. Three tracts of land were there involved, conveyed by the owners to the United States on October 1, December 10, and March 10, respectively. The applicable Alabama statute provided that from and after "the first day of October of each year when property becomes assessable the state shall have a lien" upon property for the payment of taxes, "which lien shall continue until the taxes are paid." This statute, held the Court, "purports to impose a lien as of October 1, 1936, for the taxes which, by the process of assessment, were to become payable for the tax year 1937. October first is fixed as the tax day, and as of that day owners are to make their returns, values are to be fixed and their taxes laid. *There is no question* (italics ours) *that the State thus undertakes to create an inchoate lien upon the lands as of the tax day * * *"*. In further analysis the Court examined New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754 (1933), with respect to "a tax lien created in a similar manner" under a New York statute. The lien in such a case, said the Court, "though inchoate on the day specified, and maturing when the extent of the liability is ascertained by the statutory process" was similar to the lien of a transfer tax or duty upon the estate of a decedent which is effective although the amount is ascertained after death.

The Court then set aside the tax sale of the lands (which had been had) but it refused to declare invalid the State's tax liens or to enjoin the State from asserting any tax claim in the future. The Court could, it held,

"* * * perceive no reason why the United States, albeit protected with respect to proceedings against it without its consent, should stand, so far as the existence of the liens is concerned, in any different position from that of other purchasers of lands in Alabama who take conveyances on and after the specified tax date. It is familiar practice for grantees who take title in such circumstances to see that provision is made for the payment of taxes and the Government could easily have protected itself in like manner." [16]

The Court, in Alabama, further held that the lien is made effective not only against the owners on the tax day, but also as against subsequent mortgagees and purchasers. The Court then characterized the lien as running with the land and all persons being chargeable with a knowledge of its existence. 313 U.S. at 280, 61 S.Ct. 1011, 85 L.Ed. 1327.

We hold likewise. The statutory process of assessing and determining the real property tax liability constitutes due notice as of the tax day and as such, successive vendees are put on notice of the tax liability.

■ Alabama's "inchoate lien" arising on tax day cannot be distinguished, save as a matter of semantics, from Michigan's "debt due" likewise arising on tax day. In Michigan, from the date of the assessment, the tax day, until its payment, the tax is enforceable as "a payment from the land, itself" [17] unaffected in any manner by the sale of the land during the tax year. Indeed, the burden, or charge, upon real property is incapable of severance from it because "there is no power to correct the [assessment] roll by adding property to or taking any from it". Iron Mountain

---

16. A Michigan holding similar in principle is found in Spoon-Shacket Co., Inc. v. Oakland Co., 356 Mich. 151, 97 N.W.2d 25, upholding the dissent in Consumers

Power Co. v. Muskegon County, 346 Mich. 243, 256, 78 N.W.2d 223 (1956).

17. Harrington v. Hilliard, 27 Mich. 271 (1873).

Pub. Schools v. O'Connor, 143 Mich. 35, 108 N.W. 426 (1906). We cannot avoid the conclusion that in terms of substance this charge upon the land is truly an inchoate lien,[18] becoming, after all processes of assessment, review, equalization and apportionment are completed on December 1st, a perfected lien.[19]

The Government, with commendable candor, concedes that under Michigan cases cited by the State, as well as the Opinion of the Attorney General, No. 1285, August 28, 1950, there is authority that the Michigan "debt" is equivalent to Alabama's inchoate lien, and "Thus, the same result in United States v. Alabama, *supra,* should obtain in this case." (Supplemental Memorandum of United States, p. 2). But it then goes on to argue that where a federal right is concerned, federal courts are not bound by the characterization given to a state tax by the state courts or legislature, United States v. *County of Allegheny, supra,* and that there is a "fundamental difference between establishing a taxable status *according to law* and the creation of a lien", citing, among other cases, United States v. Certain Lands in Brooklyn, 41 F.Supp. 51 (E.D.N.Y.1941). But these general propositions, sound within context, do not control the matter before us.

It is our holding that the relief granted (and denied) is controlled by *Alabama, supra.* The lands acquired by the United States on November 21, 1968 were, at the date of acquisition, subject to an inchoate lien for property taxes. Such lien is valid and, we recognize, will and does subsist as a cloud upon the title. The lien, however, cannot be enforced against the United States and any enforcement, actual or threatened, shall be permanently enjoined so long as

title to the said lands remains in the United States Government. Other relief requested by plaintiff is denied.

A suitable order may be prepared.

---

18. The term "debt" as applied thereto is actually a misnomer under the theory of Michigan's taxing statutes, but the name given the exaction is immaterial.

19. The proration statute, M.C.L.A. § 211.2 is concerned merely with the settlement of accounts between the vendor and the vendee of land during a tax year. It has no effect upon the inchoate lien for taxes upon real property which arises on tax day.