NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0473n.06

Case No. 22-1022

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| YOLANDA PEATROSS, | ) | **FILED** |
|  | ) | Nov 22, 2022 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| LIBERTY MUTUAL PERSONAL INSURANCE | ) | DISTRICT OF MICHIGAN |
| COMPANY, | ) |  |
| Defendant-Appellee. | ) | O P I N I O N |
|  | ) |  |

Before: COLE, CLAY and MATHIS, Circuit Judges.

COLE, Circuit Judge.   In May 2019, shortly after purchasing a new home, Yolanda Peatross applied for home insurance with Liberty Mutual Personal Insurance Company. Peatross's policy application indicated that there were no overdue property taxes associated with her new home. Based on the information in the application, Liberty issued Peatross a policy. Unbeknownst to Peatross, however, the seller had failed to pay property taxes on the home for the previous three years. In December 2019, Peatross's home caught fire, and she filed a claim with Liberty to cover the loss. During Liberty's claim investigation, it discovered the overdue taxes. Considering Peatross's failure to disclose the overdue taxes to be a material misrepresentation in the application, Liberty rescinded the policy, refunded Peatross's premiums, and denied Peatross coverage for her loss.

Peatross filed suit, alleging breach of contract for the denial of coverage. Her arguments relied heavily on her interpretation of a statutory provision found in Chapter 21 of the Michigan

Insurance Code, also known as the Essential Insurance Act ("the Act"). The district court disagreed with Peatross's interpretation of the Act and determined that Liberty properly rescinded the policy. In doing so, the district court granted Liberty's motion for summary judgment and denied Peatross's motion for summary judgment. Because Peatross's interpretation of the Act is incorrect and Liberty established the necessary elements to justify rescission, we AFFIRM.

## I. BACKGROUND

On May 30, 2019, Yolanda Peatross purchased a home in Detroit via quit-claim deed. That same day, Peatross applied for home insurance with Liberty Mutual Personal Insurance Company ("Liberty"). Liberty agent Kevin Gonzalez assisted Peatross in completing the insurance application over the phone. The application involved two parts: the primary application titled "Your Home Insurance Application," and a supplemental application titled "Michigan Property Supplemental Application." The supplemental application included two questions about property taxes. The first asked, "At this time, are the real property taxes on the dwelling to be insured delinquent?" On Peatross's application, the answer box indicating "No" was selected. The second question asked, "If yes, have the real property taxes on this dwelling been delinquent for two or more years?" Based on the answer to the prior question, the answer boxes to this question on Peatross's application were blank.

The parties dispute precisely how Gonzalez asked the first property tax question. Peatross maintains that the agent asked her whether the taxes were up to date, to which she replied, "to my knowledge, they are." (Peatross Dep. Tr., R. 24-8, PageID 378, 46:4–6.) Gonzalez stated that while he does not remember his exact conversation with Peatross, he would have read the question as it appears on the application.

Following the phone call, Liberty sent Peatross an email requesting her signature to complete the application. The parties disagree about what exactly Peatross received: Peatross says she only received the signature pages in this email, while Liberty contends that Peatross received the entire application. Notwithstanding these conflicting reports, the "Your Home Insurance Application" signature page included an Applicant Authorization and Acknowledgment clause and the following disclaimer: "By signing below I acknowledge that I have read and understand the Applicant Authorization and Acknowledgement as well as validated information on all pages of the application." The "Michigan Property Supplemental Application" signature page included the following statement:

> I have read and understand all of the above questions. I confirm that the facts stated in my application are true and request the company to issue the insurance, and any renewals, based on these facts. I understand that misrepresentation of information in my application could void some or all of my coverage.

Peatross e-signed both portions of the application. Based on the information in her application, Liberty issued Peatross a home insurance policy.

On December 27, 2019, a fire occurred at Peatross's home and Peatross filed a claim with Liberty to cover the loss. While investigating the claim, Liberty discovered that the property taxes associated with Peatross's home were delinquent for the years 2016, 2017, and 2018. Even though Peatross was unaware of the overdue taxes at the time of her application, Liberty still considered the failure to provide accurate information a material misrepresentation and grounds to rescind Peatross's policy. Liberty explained that had it known about the overdue taxes, the policy would not have been issued in the first instance. As a result, Liberty considered the policy "null and void as of its effective date."

Peatross filed a claim against Liberty alleging breach of contract for its denial of coverage and requesting appraisal for the fire loss. On June 9, 2021, Liberty and Peatross filed cross-

motions for summary judgment. Liberty argued that rescission was appropriate under Michigan law. Peatross disagreed, arguing that Liberty could not establish reliance, an element essential to justify rescission. Peatross's argument relied heavily on an interpretation of an exception to the definition of "eligible person" found in Chapter 21 of the Michigan Insurance Code.

The district court granted Liberty's motion and denied Peatross's motion. The district court determined that there was a material misrepresentation on the application and that Liberty relied on this misrepresentation in issuing the policy. The district court disagreed with Peatross's proposed interpretation of the statute. Relying upon our holding in *McLiechy v. Bristol West Insurance Company*, 474 F.3d 897, 898–900 (6th Cir. 2007), the district court also noted that even if it were to agree with Peatross's reading of the statute, the Sixth Circuit has held that there is no private cause of action for alleged violations of Chapter 21 of the Michigan Insurance Code. Peatross appealed.

## II. ANALYSIS

This court reviews the district court's decisions on the motions for summary judgment de novo. *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 418 (6th Cir. 2013). Relevant here, this court also reviews issues of statutory and contract interpretation de novo. *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1059 (6th Cir. 2014) (statutory interpretation); *Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*, 409 F.3d 342, 346 (6th Cir. 2005) (contract interpretation).

"It is the well settled law of [Michigan] that where an insured makes a material misrepresentation in the application for insurance, including no-fault insurance, the insurer is entitled to rescind the policy and declare it void ab initio." *Lake States Ins. Co. v. Wilson*, 586 N.W.2d 113, 115 (Mich. Ct. App. 1998) (citing *Lash v. Allstate Ins. Co.*, 532 N.W.2d 869 (Mich.

Ct. App. 1995)). "Rescission is justified in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched if he were not held accountable for his misrepresentation." *Lash*, 532 N.W.2d at 872 (citing *Britton v. Parkin*, 438 N.W.2d 919, 920–21 (Mich. Ct. App. 1989)). With respect to insurance applications, "[r]eliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *Lake States*, 586 N.W.2d at 115 (citation omitted). Liberty's rescission was permissible for several reasons.

First, Peatross made a material misrepresentation on her application. A misrepresentation is material if the insurer would have rejected the application or charged a higher premium had they been provided with the correct information. *Oade v. Jackson Nat'l Life Ins. Co.*, 632 N.W.2d 126, 131 (Mich. 2001). Peatross's application for home insurance indicated that the taxes on the home were not delinquent. But the property taxes were overdue for 2016, 2017, and 2018 at the time of the application. Liberty's rescission letter indicated, and Liberty's designee, Nicholas Marrangoni, affirmed, that had Liberty known of the delinquent taxes at the time of application, the policy would not have been issued. Under Michigan law, because Liberty would have rejected Peatross's policy if provided with the correct information, Peatross's misrepresentation relating to property taxes was material. *See also Hatcher v. Nationwide Prop. & Cas. Ins. Co.*, 610 F. App'x 507, 510 (6th Cir. 2015) ("[A]n omission in an insurance application about delinquent taxes would be material.").

To that end, Peatross's arguments that she did not make a misrepresentation in the application are not supported by Michigan law. To start, it is immaterial whether the agent or Peatross selected "No" to the property tax question on the application. In *Lake States*, an insured testified that the insurance company's agent typed the application on her behalf, which the insured

then signed without reading. 586 N.W.2d at 114. The *Lake States* court still imputed the misrepresentations to the insured because "her signature [on the application] indicated that she warranted the answers to be true and complete in every respect." *Id.* at 116. Similarly, in *Montgomery v. Fidelity & Guaranty Life Insurance Co.*, 713 N.W.2d 801, 804 (Mich. Ct. App. 2005), the court determined that having an agent fill out an insurance application did not create a genuine dispute of material fact as to whether plaintiffs themselves made a material misrepresentation in their application: "[r]egardless of who actually completed the application, plaintiff and decedent both signed the authorization, attesting to the completeness and truth of the answers, after the application was completed." *Id.* Thus, it does not matter whether it was Liberty's agent or Peatross who selected "No" in response to the property tax question. Because Peatross signed the application that included an attestation clause, she was responsible for the application's contents, including any misrepresentations therein.

Similarly, Peatross's argument that she did not receive all pages of the application in the signature email does not create a genuine dispute as to whether she made a material misrepresentation. This court rejected a plaintiff's similar contention in *Huda v. Integon National Insurance Co.*, 341 F. App'x 149, 154–55 (6th Cir. 2009). The *Huda* court explained that because the plaintiff signed a final page containing a certification that "all answers to all questions in this application are true and correct," the missing page was immaterial. *Id.* The Michigan Court of Appeals also rejected a similar argument in *Howard v. Farm Bureau Insurance*, No. 289407, 2009 WL 4985469, at *2 (Mich. Ct. App. Dec. 22, 2009). In that case, the plaintiff claimed that he only received the signature page of an insurance application and thought it was a receipt, and therefore, he could not be held responsible for misrepresentations in the application. *Id.* The court reasoned that even if the plaintiff only received the signature page, there was "sufficient information with

respect to the document's character such that plaintiff should have questioned the agent about missing pages before signing." *Id.*

Here, it is undisputed that Peatross received the signature pages of both parts of the application. She signed the primary application indicating that she "validated information on all pages of the application." She also signed the supplemental application indicating that she "confirm[ed] that the facts stated in [her] application [were true]." Just above the signature and attestation clause on the supplemental application is a question that refers to Questions 3–7, which are not shown on the same page. Like the plaintiff in *Howard*, even if Peatross only received the signature pages, she had enough information to infer that pages of the application might be missing. But she still signed both pages attesting to the accuracy of the application's information. Therefore, she is still responsible for all of the information contained in the application. In sum, Peatross made a material misrepresentation on her application by indicating that the property taxes were not overdue, and her arguments to the contrary are unavailing.

Second, Liberty relied on this material misrepresentation in issuing Peatross's policy. That there is no evidence of intentional misrepresentation does not change the outcome. Even in cases of innocent misrepresentation, rescission is permitted if the opposing party relied on the misrepresentation. *See Lash*, 532 N.W.2d at 872.

Here, Liberty confirmed that the policy would not have been issued if Liberty had known about the overdue taxes because Peatross would not have been eligible under Liberty's guidelines. In the insurance context, this confirmation is enough to establish reliance. *See Lake States*, 586 N.W.2d at 115 ("Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage.").

We see no basis for a different result based on Peatross's argument that Liberty could not establish reliance. Peatross contends that Liberty could not establish reliance because even if Liberty had known of the overdue taxes, Liberty still would have been required to issue Peatross a policy under Chapter 21 of the Michigan Insurance Code, also known as the Essential Insurance Act ("the Act."). Under the Act, insurers "shall not refuse" to issue home insurance policies to any "eligible person." Mich. Comp. Laws § 500.2117 (2022). The category of persons eligible for home insurance is narrowed by a series of exceptions. Mich. Comp. Laws § 500.2103(2). One of these exceptions relates to property taxes, carving out a "person whose real property taxes with respect to the dwelling insured or to be insured have been and are delinquent for 2 or more years . . . ." Mich. Comp. Laws § 500.2103(2)(j). Peatross claims that she does not fall within this exception because it was the former owner who failed to pay the property taxes for 2016, 2017 and 2018. Peatross argues that as a new owner, *her* taxes with respect to the property had not been delinquent for two or more years. Following this to its logical end, Peatross asserts that even if Liberty had known about the delinquent taxes at the time of her application, because she was still an "eligible person" under the Act, Liberty would have been required to issue the policy and therefore cannot establish reliance. But, given the plain language of the statute, the surrounding statutory text, and Michigan property law, a new buyer in Peatross's situation would not be considered an "eligible person" under the Act, so Peatross's reliance argument fails.

Under Michigan law, "[t]he primary rule of statutory construction is that, where the statutory language is clear and unambiguous, the statute must be applied as written." *McQueer v. Perfect Fence Co.*, 917 N.W.2d 584, 589 (Mich. 2018) (quoting *Cruz v. State Farm Mut. Auto. Ins. Co.*, 648 N.W.2d 591, 594 (Mich. 2002)). "When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not

permitted." *State Farm Fire & Cas. Co. v. Old Republic Ins. Co.*, 644 N.W.2d 715, 717 (Mich. 2002) (citing *Huggett v. Dep't of Nat. Res.*, 629 N.W.2d 915, 919 (Mich. 2001)). Courts "may refer to dictionary definitions when appropriate when ascertaining the precise meaning of a particular term." *Morinelli v. Provident Life & Accident Ins. Co.*, 617 N.W.2d 777, 781 (Mich. Ct. App. 2000) (citing *Popma v. Auto Club Ins. Ass'n*, 521 N.W.2d 831, 836 (Mich. 1994)). Finally, "[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas. Co.*, 644 N.W.2d at 717 (citing *Wickens v. Oakwood Healthcare Sys.*, 631 N.W.2d 686, 690 (Mich. 2001)).

Statutory interpretation begins by examining the statute itself. *McQueer*, 917 N.W.2d at 589 (citing *Lash v. Traverse City*, 735 N.W.2d 628, 633 (Mich. 2007)). The pertinent portion of the statute reads:

> Eligible person does not include any of the following:
> . . .
> (j) A person whose real property taxes with respect to the dwelling insured or to be insured have been and are delinquent for 2 or more years at the time of renewal of, or application for, home insurance.

Mich. Comp. Laws § 500.2103(2)(j).

Interpretation of this provision hinges on the exclusion's first six words: "a person whose real property taxes[.]" "Whose" is a possessive pronoun indicating that something "relates to" or "belongs to" a particular person. *Whose, Oxford English Dictionary* (2022). So, the statutory exception refers to property taxes that relate to or belong to a particular person—in this case, the insurance applicant. The question here is whether or to what extent the tax status of an insurance applicant's newly acquired home "relates to" or "belongs to" them at the time of purchase—specifically, whether a purchaser inherits the entire tax status of their newly acquired home or

whether the purchaser is only responsible for the taxes assessed on the property from that point

forward. Michigan law indicates the former.

Michigan law states that tax liens resulting from overdue property taxes remain with the

property until paid off. The relevant law provides, in part:

> [A]ll taxes become a debt due to the township, city, village, or county from the
> owner or person otherwise assessed on the tax day provided for in sections 2 and
> 13. The amounts assessed . . . on any interest in real property shall become a lien
> on the real property . . . . The lien for those amounts, and for all interest and charges
> on those amounts, shall continue until paid.

Mich. Comp. Laws § 211.40.

Michigan case law confirms that new purchasers take property subject to existing liens.

*See Jacobs v. Union Tr. Co.*, 118 N.W. 921, 922 (Mich. 1908) ("It is and has always been

fundamental, in our revenue system, that a lien upon real estate exists for the purpose of collecting

taxes levied thereon. Change of ownership does not affect it."); *In re EverKrisp Food Prods. Co.*,

11 N.W.2d 852, 857 (Mich. 1943) ("The property may be distrained although found in the hands

of a subsequent bona fide purchaser. Such a purchaser, although in good faith, takes the property

subject to the tax lien." (citing *Crawford v. Koch*, 135 N.W. 339, 343 (Mich. 1912))).

Further, "[t]he law in Michigan is explicit in stating that the enforcement of an *ad valorem*

tax is an *in rem* proceeding against the *property* rather than the *owner*." *United States v. Michigan*,

346 F. Supp. 1277, 1280 (E.D. Mich. 1972) (emphasis added) (first citing *Lucking v. Ballantyne*,

94 N.W. 8 (Mich. 1903); then citing *City of Detroit v. O'Connor*, 5 N.W.2d 453 (Mich. 1942)).

Indeed, in Michigan when the government seeks to foreclose on a property because of delinquent

taxes, the government must send notice "to the person to whom a tax bill for property returned for

delinquent taxes was last sent *or* to the person identified as the owner of property returned for

delinquent taxes[.]" Mich. Comp. Laws § 211.78b (emphasis added). If the delinquent taxes were

attributable only to the owner of the property at the time the property taxes were assessed, then the notice statute would not have these two foreclosure-notice options.

Returning to the statute, the exception refers to "a person whose real property taxes"—in other words, the statute refers to property taxes that "belong to" or "relate to" a particular person. *Whose, Oxford English Dictionary* (2022). In Michigan, property taxes "relate to" a particular individual because of a person's relationship to the property. Because of Peatross's status as owner at the time of application, the overdue property taxes then belonged to or were related to her.

The inclusion of both "have been and are" in the statute does not change the outcome. It is true that all words in the statute must be interpreted to avoid surplusage. *State Farm Fire & Cas. Co.*, 644 N.W.2d at 717. "Are" makes it clear that to fall within the statute's language, the property taxes must be delinquent at the time of the insurance application. "Have been" indicates that the property taxes must have been overdue for a period of two years leading up to the application. At the time of application, a person who has paid off taxes that were overdue for two or more years is an eligible person, as is a person whose property taxes are currently delinquent but have been so for less than two years. Only an individual "whose property taxes have been *and* are delinquent for two years" at the time of the application will not be an "eligible person" under the Act. Thus, both "have been and are" serve independent purposes, and neither is surplusage.

Nor does the surrounding statutory text suggest a different interpretation. *See Breighner v. Mich. High Sch. Athletic Ass'n, Inc.*, 683 N.W.2d 639, 648 (Mich. 2004) ("[A] statutory term cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme."). Section 500.2103(2) lists several other categories of people excluded from the definition of "eligible person," some of which turn on characteristics of the property rather than characteristics of the insurance applicant. For example, one exception provides that "a

person who insures or seeks to insure a dwelling that has physical conditions that clearly present an extreme likelihood of a significant loss under a home insurance policy" is not an "eligible person." Mich. Comp. Laws § 500.2103(2)(i). In this physical-condition exception, whether a person is eligible depends on the conditions of the building they seek to insure. Similarly, in the property tax exception at issue here, whether a person is eligible depends on the property tax status of the building they seek to insure.

Only one other exception concerning home insurance uses the word "whose." Mich. Comp. Laws § 500.2103(2)(g). This exception carves out from the definition of eligible person "a person whose policy of home insurance has been canceled because of nonpayment of a premium within the immediately preceding 2-year period, unless the premium due on the policy is paid in full before issuance or renewal of the policy." *Id.* Insurance policies are treated like contracts between the insured and the insurer. *Rory v. Cont'l Ins. Co.,* 703 N.W.2d 23, 26 (Mich. 2005). Thus, while property taxes are associated with individuals through their relationship to a particular piece of real estate, a home insurance policy is associated with an individual directly through their name on the policy. In sum, the property tax exception's surrounding statutory context does not suggest that a new-owner applicant like Peatross was meant to be considered an "eligible person."

Finally, district courts who have examined this issue have uniformly decided in favor of insurers like Liberty. *See Stevens v. Liberty Ins. Corp.*, No. 11-14695, 2012 WL 2408719, at *2–3 (E.D. Mich. June 26, 2012) (granting summary judgment to an insurer despite the plaintiff's claim that she believed the seller was going to use the purchase money to pay the overdue taxes); *Love v. Liberty Ins. Corp.*, No. 11-10740, 2011 WL 5143383, at *2 (E.D. Mich. Oct. 31, 2011) (determining that rescission was appropriate even though the new buyer was unaware that the seller had failed to pay property taxes for several years); *Hatcher v. Nationwide Prop. & Cas. Ins.*

*Co.*, 34 F. Supp. 3d 704, 711 (E.D. Mich. 2014), *aff'd*, 610 F. App'x 507 (6th Cir. 2015). While it is true that the district courts in *Stevens*, *Love*, and *Hatcher* were not presented with the precise statutory interpretation argument Peatross asserts here, all three decisions either referenced or quoted the language of section 500.2103(2)(j) in their reasoning. *See Stevens*, 2012 WL 2408719, at *3; *Love*, 2011 WL 5143383, at *2; *Hatcher*, 34 F. Supp. 3d at 709. This indicates a familiarity with the statute and suggests that when faced with a fact pattern like Peatross's, involving a new purchaser and delinquent taxes accrued by a former owner, a plain reading of the statute does not sound alarms as to its applicability.

The statute's plain language, the surrounding statutory context, and relevant case law indicate that a new buyer like Peatross is not an "eligible person" because she falls into the property tax exception. Therefore, Liberty would not have been required to issue her a policy under the Act if it had known of the overdue taxes, and Liberty established reliance on the misrepresentation.

Peatross also argues that Liberty cannot establish reliance because Liberty has not been injured in a way that "inures to the benefit" of Peatross. *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 37 (Mich. Ct. App. 1998) (citing *United States Fidelity & Guar. Co. v. Black*, 313 N.W.2d 77, 85 (Mich. 1981)). But, if the policy were to remain in place and Peatross's insurance claim was paid, she would benefit from her misrepresentation to Liberty's detriment because she would receive a claim pay-out based on a policy that, per Liberty's eligibility guidelines, should not have existed in the first instance. Because the application included a material misrepresentation and Liberty relied on that misrepresentation to issue the policy, rescission is appropriate under Michigan law.

Additionally, rescission is appropriate because it was permitted by the terms of the policy. "[I]nsurance policies are subject to the same contract construction principles that apply to any

- 13 -

other species of contract." *Rory*, 703 N.W.2d at 26. "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Id.* Further, a court is not to "modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties[.]" *Id.* For the purposes of interpretation, the court gives contractual language "its ordinary and plain meaning[,]" and the "policy application, declarations page of [the] policy, and the policy itself" form the contract. *Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.*, 706 N.W.2d 426, 432 (Mich. Ct. App. 2005).

Here, the supplemental policy application statement is clear. Peatross signed below a statement that read, "I understand that misrepresentation of information in my application could void some or all of my coverage." Peatross made a misrepresentation by failing to disclose the overdue taxes, and per this express term, Liberty was permitted to void the policy. While Peatross raises an unclean hands argument, it relies on her interpretation of the Act. Because Peatross's interpretation of the Act is incorrect, her unclean hands argument does not present a viable defense to enforcement.

Indeed, this reasoning aligns with that of other courts who relied on contract interpretation to decide similar innocent misrepresentation cases. *See, e.g., Hatcher,* 610 F. App'x at 511 ("She therefore misrepresented a material fact during her application, and, as such, defendant was entitled by the terms of the contract to rescind her policy."); *Nationwide Prop. & Cas. Ins. Co. v. Brown*, 260 F. Supp. 3d 864, 879–80 (E.D. Mich. 2017) ("In summary, the court finds Plaintiff is entitled to summary judgment based on James's material misrepresentations . . . [and] Tamara's repeated material misrepresentations . . . . Under the terms of the policy, Plaintiff is entitled to declare the policy void '*ab initio*' due to either of these findings."); *Carter v. Liberty Ins. Corp.*,

No. 11-CV-14690, 2012 WL 5844653, at \*7 (E.D. Mich. Nov. 19, 2012) ("Carter breached the terms of the Policy and the Application by failing to disclose of [sic] the status of the back taxes. Thus, the Policy is 'null and void.'"). In these cases, the policy was rescinded per an express term of the contract that provided for rescission in the event of a misrepresentation. The same is true here.

Finally, we address briefly whether Peatross properly asserted a claim for relief given this court's decision in *McLiechy v. Bristol West Insurance Company*, 474 F.3d 897, 898–900 (6th Cir. 2007). Peatross filed her claim in response to Liberty's invocation of rescission—a remedy arising from contract law. Rescission is appropriate only when a party can prove: (1) a material misrepresentation by the opposing party, and (2) in cases of innocent misrepresentation, reliance on that misrepresentation. *Lash*, 532 N.W.2d at 872. The only way to determine whether the contract was properly rescinded is to determine whether Liberty can prove each of these elements. Thus, Peatross's claim was one that in form and in substance arose from contract law. Unlike the plaintiffs in *McLiechy*, Peatross did not seek to recover directly for violations of the statute, so *McLiechy*'s holding does not bar her claim. *See McLiechy*, 474 U.S. at 898.

## III.  CONCLUSION

We affirm the district court's grant of summary judgment to Liberty and denial of summary judgment to Peatross.